UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN M. THOMPSON,

        Plaintiff

  v.

LIONEL PIERRE, *et al.*,

        Defendants.

CIVIL ACTION NO. 3:24-cv-00402

(MEHALCHICK, J.)

**MEMORANDUM**

Plaintiff Shawn Thompson ("Thompson"), an inmate housed at the Dauphin County Prison, in Harrisburg, Pennsylvania, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Deputy Warden Lionel Pierre, Custody Major Roger Lucas, Director of Unit Management Jill Cuffaro, Deputy Warden of Treatment Latonya Ray, and Correctional Officer Luis Rodriguez. Presently before the Court is Defendants' motion (Doc. 13) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion but will grant Thompson leave to amend certain claims as set forth below.

**I.**     **BACKGROUND AND PROCEDURAL HISTORY**

The allegations of the complaint relate to events that occurred at the Dauphin County Prison between November 16, 2023 through November 21, 2023, and December 2, 2023 through December 17, 2023, when Thompson was a pretrial detainee. (Doc. 1, at 2; Doc. 1, at 4). Thompson first alleges that Defendant Rodriguez "stole[]" his legal mail at the "direct order from Warden Pierre." (Doc. 1, at 4). He alleges that the Warden ordered the confiscation of his writing materials, paper, and envelopes, which interfered with his "access to the United States Postal Service." (Doc. 1, at 4). Thompson next alleges that he was subjected to cruel and unusual punishment because he was "forced to live in complete

darkness for 15 straight days" and "had to eat, urinate, defecate in utter darkness which in turn[] caused [him] to consume insects, hair and other unknown substances." (Doc. 1, at 4). Lastly, Thompson alleges that his religious rights were infringed upon when inmates were only permitted to access "Bibles and Qurans" through electronic tablets and then, from November 16, 2023 to December 19, 2023, "[a]ll tablets were confiscated" throughout the prison. (Doc. 1, at 4). Thompson claims emotional and mental health injuries and seeks monetary damages, prosecution of the Warden, and implementation of new policies. (Doc. 1, at 5).

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and

2

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded

complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting FED. R. CIV. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III.   DISCUSSION**

    A.   PERSONAL INVOLVEMENT

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d

366, 374 (3d Cir. 2020) (citing *Rode*, 845 F.2d at 1207). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity. *Dooley*, 957 F.3d at 374 (quoting *Rode*, 845 F.2d at 1207). Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. *See Dooley*, 957 F.3d at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance").

Thompson's first pleading deficiency is his failure to allege personal involvement of most Defendants. Although he names Lucas, Ray, and Cuffaro in the defendant-identification section of the form complaint, he does not include any specific allegations of wrongdoing that would establish personal involvement by these Defendants in the purported constitutional violations. Thompson never pleads what each Defendant did or did not do. In order to state a Section 1983 claim, Thompson must specify each Defendant's personal involvement in the alleged constitutional misconduct. He failed to do so with respect to Defendants Lucas, Ray, and Cuffaro. Accordingly, the Court must dismiss any Section 1983 claim against Lucas, Ray, and Cuffaro pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

B. DENIAL OF ACCESS TO THE COURTS

Thompson claims that the deprivation of his legal property denied him access to the courts. (Doc. 1, at 4). Specifically, he alleges that Warden Pierre ordered Defendant Rodriguez to steal his legal mail and that the Warden ordered the confiscation of his writing materials. (Doc. 1, at 4). In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's limited right of access to the courts. Prisoners are not necessarily

"capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "The right of access to the courts must be adequate, effective and meaningful and must be freely exercisable without hindrance or fear of retaliation." *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (internal citations omitted). "[T]o pursue a claim of denial of access to the courts an inmate must allege actual injury, such as the loss or rejection of a legal claim." *Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir. 1997) (citing *Lewis* , 518 U.S. 343). And he must show that the deprivation of legal materials hindered his efforts to pursue a non-frivolous legal claim. *See Oliver*, 118 F.3d at 177 (3d Cir. 1997) (plaintiff alleging access to courts claim must show loss or rejection of a legal claim).

      Thompson's access-to-courts claim fails. First, he has not alleged that he suffered a cognizable injury, i.e., that he lost the chance to pursue a nonfrivolous post-conviction challenge or a civil rights claim. Thompson does not identify his underlying criminal matters or how he was hindered during his criminal proceedings. He does not allege that he was representing himself in a criminal case such that denial of access to legal materials could materially affect his criminal case. He also does not plausibly plead how the confiscation of his legal materials affected any facet of his criminal proceedings.

      Additionally, Thompson does not assert that he lost the chance to pursue a civil claim. Thompson's failure to even identify the underlying civil action is fatal to his access-to-courts claim. He does not include a case name, docket number, or court such that he has "describe[d] the underlying claim well enough to show that it is more than mere hope." *Rivera v. Monko*, 37 F.4th 909, 916 (3d Cir. 2022) (quoting *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008)).

6

Second, Thompson has not pled facts showing that he has no other remedy than a Section 1983 denial-of-access lawsuit. He does not allege that he cannot assert an appeal or post-conviction claim in his criminal prosecution. Nor does he allege that he has another civil that has been dismissed or otherwise ended. Thompson's access-to-courts claim suffers from multiple pleading deficiencies. Because these pleading deficiencies are largely factual in nature, the Court will dismiss the access-to-courts claim and grant Thompson leave to amend this claim against Defendants Pierre and Rodriguez.

C. CONDITIONS OF CONFINEMENT CLAIM

Because Thompson was a pretrial detainee at the relevant time, the Fourteenth Amendment governs his conditions of confinement claim. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that their conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Stevenson*, 495 F.3d at 68 (internal quotations and alterations omitted).

Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. *Bell*, 441 U.S. at 542. Additionally, "'a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir.

7

2012) (quoting *Stevenson*, 495 F.3d at 68); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

To satisfy the subjective component of the analysis, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

"The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Knowledge may be shown where the official has actual notice of the risk, *Nami v. Fauver*, 82 F.3d 63, 67-68 (3d Cir. 1996), or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842.

It appears that Thompson is attempting to assert a conditions-of-confinement claim against all five Defendants. Assuming without deciding that Thompson's allegations of being kept in complete darkness for 15 days rise to the level of a sufficiently serious deprivation, he fails to adequately plead personal involvement or deliberate indifference by any Defendant.

Thompson asserts that he suffered from the alleged conditions as a result of "orders given by the Warden." (Doc. 1, at 4). This vague and conclusory allegation fails to plausibly state personal involvement in the unlawful conduct, let alone deliberate indifference to Thompson's health or safety. Deliberate indifference requires that the "prison official *must both know of and disregard* an excessive risk to inmate health or safety." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (emphasis added) (citation omitted). Thompson's allegations against the Warden are purely conclusory and do not demonstrate deliberate indifference. For these reasons, the Court will dismiss this claim against Defendant Pierre. However, the dismissal will be without prejudice and with leave to amend.

Thompson's allegations against the other four Defendants also fail to plausibly establish personal involvement in the conditions of confinement or deliberate indifference to his health and safety. Thompson does not allege that Defendants Lucas, Cuffaro, Ray, or Rodriguez were involved in any way with the violation of his rights. The failure to specifically identify these individuals in the alleged wrongdoing does not suffice to state personal involvement or deliberate indifference. The Court will dismiss the conditions-of-confinement claim against Defendants Lucas, Cuffaro, Ray, and Rodriguez.

D.  DENIAL OF RELIGIOUS MATERIAL

Thompson alleges that the deprivation of religious literature violated his free exercise rights. (Doc. 1, at 4). The First Amendment states that "Congress shall make no law

9

respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. CONST. amend. I. "Inmates clearly retain protections afforded by the First Amendment… including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). A prison regulation can impinge on the right of free exercise only to the extent "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Assuming that an inmate's religious view is "sincerely held," courts consider four factors determining whether the regulation is reasonable: (1) whether the regulation bears a valid, rational connection to a legitimate and neutral government objective; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the absence of ready alternatives. *Robinson v. Wetzel*, 648 F. App'x 168, 173 (3d Cir. 2016) (citing *Turner*, 482 U.S. at 89-90).

      Thompson alleges that, in accordance with Dauphin County Prison policy providing that all Bibles and Qurans be accessed through a tablet, he was deprived access to religious materials when the prison confiscated all tablets for approximately one month. (Doc. 1, at 4). Thompson does not identify the religion to which he adheres or that he sincerely holds those religious beliefs. He does not allege facts to explain the connection or significance, if any, that "all Bibles and Qurans" have to his religion or religious practices. (Doc. 1, at 4). He also does not allege that he was denied the right to attend religious services or pray in his cell as alternative means of exercising his religious beliefs. Nor does he allege that he was denied all recognized means to practice his faith.

Thompson only asserts that prison tablets were confiscated for approximately one month under orders from the Warden. (Doc. 1, at 4). This conclusory allegation is insufficient to state a free expression violation against the Warden. However, because the Court cannot say with certainty that Thompson cannot allege additional facts to support this claim against Warden Pierre only, dismissal will be without prejudice and with leave to amend.

Conversely, it is apparent that Thompson's free expression claim fails against Defendants Lucas, Cuffaro, Ray, and Rodriguez based on lack of personal involvement. Thompson does not allege any personal involvement in this First Amendment violation by Defendants Lucas, Cuffaro, Ray, or Rodriguez. Because Thompson does not include any allegations that these four Defendants violated his First Amendment free expression rights, the Court will dismiss this claim pursuant to 28 U.S.C. § 1915A(b)(1).

E. LEAVE TO AMEND

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 114. For the reasons set forth above, the Court will grant Thompson leave to amend the following claims: his conditions of confinement claim against Defendant Pierre; his free expression claim against Defendant Pierre; and his access-to-courts claim against Defendants Pierre and Rodriguez. Thompson is advised that his amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. His amended complaint shall set forth his claims in short, concise,

and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim [1]

## IV. CONCLUSION

Consistent with the foregoing, the Court will grant Defendants' motion (Doc. 13) to dismiss. The motion will be granted with prejudice and without leave to amend as to the claims against Defendants Lucas, Cuffaro, and Ray. The motion will be granted without prejudice and with leave to amend as to the specific claims identified against Defendants Pierre and Rodriguez.

An appropriate Order shall issue.

Dated: January 6, 2025              *s/ Karoline Mehalchick*
                                    **KAROLINE MEHALCHICK**
                                    **United States District Judge**

---

[1] Because Thompson will be afforded the opportunity to file an amended pleading, the Court will refrain from addressing Defendants' qualified immunity argument at this time. (Doc. 14, at 8-9). Defendants are free, of course, to reassert this argument following the filing, if any, of Thompson's amended pleading.